# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**KYLE ALLEN,**

       **Plaintiff,**

v.                                              Case No: 6:21-cv-1702-PGB-LHP

**SUNBELT RENTALS, INC. and
TEREX USA, LLC,**

       **Defendants.**
_____/

## **ORDER**

This cause is before the Court on the following:

1. Defendant Terex USA, LLC's ("**Defendant Terex**") Motion to Exclude Plaintiff's Expert Witness Rob Bullen, P.E. (Doc. 30 (the "***Daubert* Motion**")) and Plaintiff Kyle Allen's response thereto (Doc. 35);

2. Defendant Terex's Motion for Summary Judgment (Doc. 31), Plaintiff's response thereto (Doc. 36), and Defendant Terex's reply (Doc. 38); and

3. Defendant Sunbelt Rentals, Inc.'s ("**Defendant Sunbelt**") Motion for Summary Judgment (Doc. 32), Plaintiff's response thereto (Doc. 37), and Defendant Sunbelt's reply (Doc. 39).

Upon consideration, the *Daubert* Motion and both Summary Judgment Motions are due to be denied.

I.   **BACKGROUND**

This dispute stems from injuries Plaintiff sustained during the operation of a Terex RL4 Light Tower (the "**Light Tower**"). (Doc. 1-1).

   A.   **The Record Facts Not Reasonably In Dispute**[1]

At least this much is not reasonably in dispute. On December 2, 2019, Plaintiff, an exterior construction mason, began to ready for the end of his day at a jobsite and, as part of this process, attempted to lower a Light Tower mast which fell in an uncontrolled manner and injured at least his hand. (Doc. 24, 47:7–17, 49:2–12, 66:18–67:12, 75:8–15, 87:17–88:7). The Light Tower was present at the jobsite on the day in question because a contractor for which Plaintiff had been performing subcontractor responsibilities had rented it from Defendant Sunbelt. (Doc. 25, p. 7).

Plaintiff had been on-site for the associated masonry job for about a week prior to this incident and had used the Light Tower at least a couple of times. (Doc. 24, 49:1–6, 68:14–69:15). Part of Plaintiff's responsibilities while at the jobsite was to raise and lower the light tower. (*Id.* 75:8–15).

---

[1]   The following facts are not reasonably in dispute based on citations to the record evidence unless indicated otherwise. Vexingly, the parties failed to file a jointly signed stipulation of agreed material facts along with the summary judgment briefing as required by the Court's Case Management Scheduling Order. (Doc. 13, p. 8) ("Fourteen (14) days before a party files a motion for summary judgment, counsel for all parties affected by the motion shall meet and confer to create a Stipulation of Agreed Material Facts which will be deemed admitted for the purpose of the motion. The Stipulation shall be filed with the Court."). The Court normally uses this filing to focus its analysis on disputed rather than undisputed facts. Even if this conferral process should have been initiated by Defendants, this omission is the fault of all parties since all are required to jointly make this filing. The Court nevertheless finds itself capable of sifting through the admissible record. Accordingly, while under no obligation to do so, the Court will still consider the summary judgment motions.

The following is a labeled diagram of the Light Tower Operator's Manual from Defendant Terex:



(Doc. 29, p. 20).

The Operator's Manual instructs users not to operate the Light Tower unless they read, understand, and obey the manufacturer's instructions and safety rules. (*Id.* at p. 6). The way to lower the mast as described in the Operator's Manual is by rotating the winch handle counterclockwise until the mast is in the stowed position. (*Id.* at p. 39). The Operator's Manual does not instruct operators to disengage the pawl; in fact, the word "pawl," does not appear in the Operator's Manual. (*See generally id.*). The pawl is a safety feature of the Light Tower when operating correctly. (Doc. 28, 93:17–19). The Operator's Manual includes a "Crushing Hazard" warning that advises users not to lower the mast unless the area below it is clear of personnel and obstructions and not to place their hands in pinch points on the machine. (Doc. 29, p. 16). The winch ratchet where the pawl is located is a pinch point. (Doc. 28, 80:9–11). There were no warnings, however, affixed to the Light Tower itself.

While Plaintiff does not recall if the Operator's Manual was with the Light Tower on the day in question, some testimony indicates it was present. (Doc. 24, 83:1–3; Doc. 28, 132:11–13). Moreover, Plaintiff does not recall ever looking for the Operator's Manual for the Light Tower or reading it and admits he ordinarily does not look for operator's manuals for equipment he uses at jobsites. (Doc. 24, 83:4–9, 87:12–15).

### B. The Record Facts Reasonably In Dispute

Despite both Defendants' contentions to the contrary, the rest of the record is not so clear.[2] Under Defendants' telling, Plaintiff admitted to releasing the pawl in his attempt to lower the Light Tower at the end of the day in question. (Docs. 30, 31, 32). Defendants point to Plaintiff's own testimony in support. (*See* Doc. 24, 45:20–50:5). Defendants argue that Plaintiff has thus admitted to triggering the freefall of the mast on the day in question by his own actions. (Docs. 30, 31, 32). Plaintiff is correct to point out this is not quite accurate. (Docs. 35, 36, 37). Instead, Plaintiff has admitted he intended to release the pawl on the day in question, that he placed his hand on it, that he felt tension when he did so, and that he then was hit by the falling tower. (Doc. 24, 45:20–50:5, 109:22–111:11). Plaintiff has not admitted, however, to actually releasing the pawl. Instead, in response to the question, "Did you depress or push or pull the pawl back?" Plaintiff stated:

> **I don't know.** You would have to put tension on the gear first to let the pawl release because it locks, it's locking the gear. So you'd have to tension like you're going up for a second to release—for the pawl to release. So when I went to release it, I put tension on it and realized there was not tension on the cable. It didn't feel right to me.

(*Id.* 44:10–17) (emphasis added). As such, the cause of the Light Tower's uncontrolled fall is still reasonably in dispute.

---

[2] This is particularly the case with respect to the summary judgment motions as the Court must "view the evidence and all factual inferences therefrom in the light most favorable to the non-moving party and resolve all reasonable doubts about the facts in favor of the non-movant." *Davila v. Gladden*, 777 F.3d 1198, 1203 (11th Cir. 2015) (quoting *Carter v. City of Melbourne*, 731 F.3d 1161, 1166 (11th Cir. 2013) (per curiam)).

### C. Procedural History

On August 13, 2021, Plaintiff initiated this action in state court, claiming that Defendant Terex and Defendant Sunbelt were liable for his injuries sustained during the operation of the Light Tower under various strict liability and negligence theories. (Doc. 1-1). Specifically, Plaintiff alleges in Count I that Defendant Terex is strictly liable for the Light Tower's defective design, manufacture, and inadequate warnings; in Count II that Defendant Terex was negligent for the same; in Count III that Defendant Sunbelt is strictly liable for either renting out a defective product, improperly maintaining it, or failing to properly warn users of its defective or inherently dangerous nature; and in Count IV that Defendant Sunbelt was negligent for the same. (*Id.* ¶¶ 38–71). Defendants then removed the case to this Court on October 13, 2021. (Doc. 1).

At some point, Plaintiff retained Rob Bullen, P.E., a mechanical engineer by trade ("**Engineer Bullen**"). (Doc. 26). Engineer Bullen eventually concluded: (1) "at the time of the accident, the failure of the [Light Tower] to have a properly functioning safety device which prevented the mast from collapsing uncontrollably, rendered the subject machine defective and unreasonably dangerous and led to the circumstances that caused this accident;" (2) "the failure of [Defendant Terex] to provide proper warnings on the machine and proper warnings and operating instructions in the operator's and service manuals, regarding the light tower crush hazard and inspecting the mast brake, further rendered the [Light Tower] defective and unreasonably dangerous and contributed

6

to the circumstances that caused this accident;" and (3) "[Defendant] Terex's failure to provide inspection procedures and requirements for the mast brake components of the vertical mast [L]ight [T]ower rendered the subject machine defective and unreasonably dangerous and led to the circumstances that caused this accident." (Doc. 27, p. 29 (the "**Report**")).

Defendant Terex now moves to strike the Report and exclude Engineer Bullen's expert witness testimony (Doc. 30) and further requests summary judgment (Doc. 31). Defendant Sunbelt also requests summary judgment (Doc. 32). After responsive briefing with respect to each motion (Docs. 35, 36, 37, 38, 39), this matter is ripe for review.

## II.   STANDARD OF REVIEW

### A.   *Daubert* Motion Standard

Federal Rule of Evidence 702 permits "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education" to testify in the form of an opinion. Rule 702 imposes an obligation on district courts to act as gatekeepers "to ensure that speculative, unreliable expert testimony does not reach the jury" under the mantle of reliability that accompanies "expert testimony." *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002); *see Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 589 (1993). This gatekeeping role applies "not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'otherwise specialized' knowledge." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141, 147–48 (1999).

The party offering an expert opinion has the burden of establishing three criteria by a preponderance of the evidence: qualification, reliability, and helpfulness. *See McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1238 (11th Cir. 2005); *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1292 (11th Cir. 2005). First, the witness must be "qualified to testify competently regarding the matters [s]he intends to address." *Rink*, 400 F.3d at 1291. Indicia of an expert's qualifications may be evidenced by education, training, work experience, publication in the pertinent field, and membership in professional societies. *See Am. Tech. Res. v. United States*, 893 F.2d 651, 656 (3d Cir. 1990).

Second, the expert witness must employ "sufficiently reliable" scientific methods or principles to form her opinions. *Rink*, 400 F.3d at 1291. The reliability of an expert's methodology can be evaluated by considering a wide range of factors, including: (1) whether the expert bases her opinion on sufficient facts or data; (2) whether the expert unjustifiably extrapolates her research to reach an unfounded conclusion; (3) whether the expert considers or accounts for contradictory studies or data; (4) the extent to which the methods used rely on the expert's subjective interpretations; and (5) whether the expert is being as careful as an expert in the same field would be in conducting professional work outside the context of paid litigation. *See Daubert*, 509 U.S. at 593–94; FED. R. EVID. 702 advisory committee notes to 2000 amendments.

Third, the expert's testimony must "assist the trier of fact to understand the evidence or to determine a fact in issue." *Daubert*, 509 U.S. at 591. Expert

8

testimony helps where it concerns matters beyond the ken of the average juror and will allow the jury to understand the evidence or to resolve a factual dispute. *See Kumho Tire*, 526 U.S. at 148–49. Conversely, there will be no need for an expert's opinion where the jury can decide a disputed issue through the application of common sense or simple logic considering the evidence and testimony presented at trial. *See Dhillon v. Crown Controls Corp.*, 269 F.3d 865, 871 (7th Cir. 2001). Further, like all evidence and testimony, an expert's opinion must be relevant to an issue in the case and must hold probative value that outweighs the concerns listed in Rule 403. *Daubert*, 509 U.S. at 591.

### B.   Summary Judgment Standard

To prevail on a summary judgment motion, the movant must show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case. An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014).

Importantly, the Court must "view the evidence and all factual inferences therefrom in the light most favorable to the non-moving party and resolve all reasonable doubts about the facts in favor of the non-movant." *Davila*, 777 F.3d at 1203 (quoting *Carter*, 731 F.3d at 1166). At the same time, "[a] mere 'scintilla' of

evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Brooks v. Cnty. Comm'n of Jefferson Cnty.*, 446 F.3d 1160, 1162 (11th Cir. 2006) (quoting *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990)). Ultimately, summary judgment should only be granted "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## III. DISCUSSION

The Court first addresses the *Daubert* Motion as its denial partially resolves Defendant Terex's Motion for Summary Judgment. The Court then delineates why the record evidence is accordingly insufficient to grant either of the Defendants' summary judgment requests.

### A. The *Daubert* Motion

Defendant Terex argues that Engineer Bullen's expert testimony should be excluded because "it is not based on sufficient facts or data, is not the product of reliable methods, and is not the result of reliable application of [Engineer] Bullen's methods to the facts of this case." (Doc. 30, p. 3).[3] The Court will address these arguments in turn.

---

[3] Defendant Terex does not challenge Engineer Bullen's qualifications or helpfulness. (*See* Doc. 30). Thus, the Court does not address these elements.

### *1.     Reliability and Sufficiency of the Facts and Data*

In the end, Engineer Bullen's reliance on a version of events that is still reasonably in dispute rather than conforming his opinions to the Defendants' preferred version of events does not render his opinion unreliable. While Defendant Terex accurately notes that Engineer Bullen admitted to not speaking with Plaintiff prior to authoring the Report, the Report demonstrates his familiarity with Plaintiff's story. (*See* Doc. 26; Doc. 28, 91:3–9). Contrary to Defendant's characterization, the Report does not appear to be composed as a *post hoc* rationalization, the product of motivated reasoning—at least when judged under the preponderance of the evidence standard. Instead, Engineer Bullen relies on a version of events that is reasonably consistent with Plaintiff's retelling of the day in question. To that end, Engineer Bullen disagreed that Plaintiff disengaged the winch pawl because "he does not specifically remember using the – disengaging the pawl to lower" the Light Tower on the day in question. (Doc. 28, 69:19–20, 70:4–8).

Relatedly, Engineer Bullen admits he was not able to inspect the Light Tower itself in its immediate post-incident condition. (Doc. 28, 92:24–93:16, 147:23–150:8). He concedes, moreover, that his conclusions regarding the defectiveness of the Light Tower's safety mechanisms were based on the product's design in general, rather than with respect to the specific condition of the Light Tower

11

immediately after it fell on Plaintiff.[4] (*Id.*). Regardless, any potential inconsistencies between Engineer Bullen's testimony or his Report and the mixed record of evidence regarding the Light Tower's condition on the day in question do not so infect his opinions as to render them wholly unreliable: he repeatedly and thoroughly explained multiple design mechanisms that may have rendered the Light Tower defective and unreasonably unsafe. (*Id.* 30:9–31:10, 75:2–4, 77:4–6, 82:23–83:5, 85:8–18, 108:1–3, 153:2–6, 158:12–21). In fact, Engineer Bullen was consistent in his opinion that the Light Tower was designed defectively because "the mast break assembly failed on the night in question" as "it failed to stop the unit from collapsing" and thus "wasn't designed to function under all the foreseeable circumstances." (*Id.* 99:20–24, 100–101, 110:10–19).[5] Put simply, with the precise mechanism for the Light Tower's fall still in dispute, to exclude

---

[4] Plaintiff argues this is due to Defendants not making the Light Tower in question available until well after it had been repaired. (Doc. 35, pp. 3–6). At this time, the Court will not wade into the propriety of the timing of the availability of the Light Tower in discovery or settle Plaintiff's spoliation argument. In addition, the Court declines to settle the factual dispute regarding the state of the Light Tower on the day in question. *Compare* (Doc. 27, p. 23 fig.10) *with* (Doc. 30, pp. 10–12). Regardless, the Court will not hold these unresolved disputes against Plaintiff by drawing related conclusions in Defendant's favor for the purpose of the motions at issue here.

[5] This testimony clearly undercuts Defendant Terex's interpretation of another portion of Engineer Bullen's testimony where it argues he admitted the mast brake was functioning properly—indeed, Defendant Terex's interpretation is a mischaracterization of Engineer Bullen's testimony because, fairly interpreted, he only admitted he could not know for sure since he was not able to timely inspect the Light Tower in the conditions under which the accident occurred. (Doc. 28, 101:5–13).

12

Engineer Bullen's testimony because of his reliance on a certain version of contested events would put the cart before the horse.[6]

### 2. Reliable Methodology

Defendant argues that Engineer Bullen did not disclose the methodology by which he arrived at his conclusions, that his conclusions are incorrect, and therefore his methodology must also be suspect. (Doc. 30, p. 19). This conclusory line of reasoning is undercut by Engineer Bullen's testimony in his deposition where he repeatedly explains the engineering principles and reasoning that led to his conclusions, even if the term "methodology" is never expressly mentioned. (*See generally* Doc. 28); *Houston Specialty Ins. Co. v. Vaughn*, No. 8:15-cv-2165, 2017 WL 11415011, *3 (M.D. Fla. Apr. 13, 2017) (noting that "experts are not required to disclose their methodologies in their written reports. Rather, if a party wants a more detailed disclosure of how an expert arrived at her opinions, its recourse is to press for a more detailed report and/or to take [the expert's] deposition in the usual course of discovery") (internal citations and quotations removed). With Engineer Bullen's deposition in tow, Defendant Terex fails to show with specificity why the answers Engineer Bullen provided in his deposition demonstrate he failed to disclose or even discuss his methodology, and in any event, the Court finds after an inspection of the deposition transcript that Defendant Terex could not have done so had it made such an effort.

---

[6] As will be explained further below, the same goes for Engineer Bullen's conclusions regarding the adequacy of the Light Tower's warnings. *See infra* III.B.2.

13

### 3. *Reliability of the Application of Methods to the Facts*

Defendant Terex argues more of the same with respect to whether Engineer Bullen reliably applied his methodology to the contested facts, but Defendant Terex's self-serving conclusions regarding the contested events in this case cannot be the basis for finding Engineer Bullen improperly applied his craft to the problem of the Light Tower's collapse. (Doc. 30, pp. 19–22). This is not to say that Defendant Terex is definitively incorrect but instead, in the end, that the Court's "gatekeeper role under *Daubert* is not intended to supplant the adversary system or the role of the jury" because "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003) (citations and quotations omitted). With the factual basis for Engineer Bullen's Report and testimony still in dispute, the Court finds that there is sufficient record evidence such that his opinion testimony is reliable enough and his methodology sound enough to present to the jury. Even so, Defendant Terex is not without recourse—it can still subject Engineer Bullen's perceived inconsistencies and reliance on a certain version of the events to the crucible of cross-examination—but exclusion of Engineer Bullen's testimony altogether is far too drastic at this time.

### B. Defendant Terex's Motion for Summary Judgment

#### 1. *The Effect of the Admissibility of Engineer Bullen's Testimony*

Defendant Terex is abundantly clear that its Motion for Summary Judgment with respect to Plaintiff's design defect claim hinges on the admissibility of Engineer Bullen's testimony. (*See* Doc. 31, pp. 11–14). This makes sense because for design defects that are not patently obvious, evidence of the alleged defect ordinarily requires expert testimony. *Humphreys v. General Motors Corp.*, 839 F. Supp. 822, 826 (N.D. Fla. 1993), *aff'd*, 47 F.3d 430 (11th Cir. 1995) (granting summary judgment where plaintiff had no expert to testify as to a non-obvious product defect); *see also Chapman v. Proctor & Gamble Distrib., LLC*, 766 F.3d 1296 (11th Cir. 2014) (affirming summary judgment where the plaintiff's only expert on the issues of general and specific causation was excluded under *Daubert*). On the flipside, however, since the Court finds Engineer Bullen's testimony admissible, genuine issues of material fact remain and, thus, summary judgment is inappropriate. Finally, any potential misuse of the Light Tower is a comparative fault issue most appropriate for the jury. *Standard Havens Prods., Inc. v. Benitez*, 648 So.2d 1192, 1194 (Fla. 1994) ("product misuse merges into the defense of comparative negligence [and] reduces a plaintiff's recovery in proportion to his or her own comparative fault.").

#### 2. *The Adequacy of Warnings in the Operating Manual*

As for Plaintiff's failure to warn claims, Defendant Terex focuses the Court's attention on Plaintiff's admission that he did not read the Operator's Manual and

15

that this omission is his ordinary practice at jobsites. (Doc. 31, pp. 7–10). Defendant Terex argues that its warnings cannot be the proximate cause of Plaintiff's injuries if he did not and would not have read them; in any event, Defendant Terex argues the warnings it provides in the Operator's Manual are adequate. (*Id.*). Defendant Terex's focus on the adequacy of the content of the warnings in the Operator's Manual as well as the undisputed fact that Plaintiff did not read the Operator's Manual, however, is a red herring.

Plaintiff contends not only that the warnings in the Operator's Manual were inadequate but that the lack of warning affixed to the Light Tower itself constituted a failure to warn. (Doc. 36, pp. 14–16). Indeed, this was one of Engineer Bullen's primary conclusions in his Report. (Doc. 27, p. 29). It is true that ordinarily a failure to read a product's warnings extinguishes proximate cause in a failure to warn claim.[7] *Lopez v. S. Coatings, Inc.*, 580 So. 2d 864 (Fla. 3d DCA 1991). At the same time, under Florida law the adequacy of product warnings is generally a question of fact unless a warning is sufficiently accurate, clear, and unambiguous. *Felix v. Hoffman-LaRoche, Inc.*, 540 So. 2d 102, 104 (Fla. 1989). Moreover, "[a] warning may be defective not only by virtue of inadequate wording, but as a result of its location and the manner in which the warning is conveyed." *Brown v. Glade & Grove Supply, Inc.*, 647 So. 2d 1033, 1035 (Fla. 4th DCA 1994); *Stanley Indus., Inc. v. W.M. Barr & Co., Inc.*, 784 F. Supp. 1570, 1575 (S.D. Fla. 1992) ("[A]

---

[7] As a result, to the extent that Plaintiff is arguing the warnings in the Operator's Manual itself are inadequate, the Court agrees with Defendant Terex that this theory of recovery is foreclosed to Plaintiff.

warning is adequate if it is communicated by means of positioning, lettering, coloring, and language that will convey to the typical user of average intelligence the information necessary to permit the user to avoid the risk and to use the product safely."); *Mizrahi v. Yamaha Motor Corp.*, No. 17-24484-civ, 2019 WL 3890311, at *4 (S.D. Fla. June 20, 2019) (denying manufacturer's motion for summary judgment because a jury should decide whether the product's warnings would "catch the attention" of a user); *Fisher v. Bumbo Int'l Trust*, No. 1:14–cv–22209, 2014 WL 12026083, at *13 (S.D. Fla. Aug. 20, 2014) (denying manufacturer's motion for summary judgment on a failure to warn claim because "there are questions of fact regarding whether the warnings are adequately prominent and conspicuous"); *see also Faddish v. Buffalo Pumps*, 881 F. Supp. 2d 1361, 1369–73 (S.D. Fla. 2012) (collecting and summarizing Florida product warning case law in both the strict liability and negligence contexts). The Court thus agrees with Plaintiff that an issue of fact remains regarding the adequacy of the placement and prominence of the Light Tower's warnings.

### C. Defendant Sunbelt's Motion for Summary Judgment

Likewise, Defendant Sunbelt's Motion for Summary Judgment is due to be denied because it also is premised upon the faulty conclusion that Plaintiff has indisputably admitted to releasing the pawl on the day in question.[8] (*See* Doc. 32, pp. 1–3, 5–7) ("This act of releasing the spring-loaded pawl on the part of the

---

[8] The Court has already elucidated why genuine issues of material fact remain on this crucial point. *See supra* Section I.B.

Plaintiff caused the [L]ight [T]ower mast sections to collapse all the way down such that the light fixtures and/or the rotating winch handle were the cause of [Plaintiff's] injuries").

Moreover, while testimony from Defendant Sunbelt's expert, H. Thomas Baker, P.E., certainly weighs in Defendant Sunbelt's favor on the issue of whether the Light Tower was defective at the time of Plaintiff's injuries, (Doc. 32, p. 9), Plaintiff presents competing record evidence, including the expert opinion testimony of Engineer Bullen, (Docs. 27, 28), such that a reasonable jury could find for either party.

## IV.   CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant Terex's *Daubert* Motion (Doc. 30) is **DENIED**;

2. Defendant Terex's Motion for Summary Judgment (Doc. 31) is **DENIED**;[9]

3. Defendant Sunbelt's Motion for Summary Judgment (Doc. 32) is **DENIED**.

---

[9] The Court finds oral argument (Doc. 34) and an evidentiary hearing (Doc. 35, p. 20) unnecessary to resolve the motions in question. As such, those related requests are likewise denied.

**DONE AND ORDERED** in Orlando, Florida on March 7, 2023.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of Record
Unrepresented Parties